WALLACE, JUDGE:
These claims were consolidated for hearing as the factual situations involved in each are identical.
Claimants, at the time of the incident which is the subject of these claims, were adjacent landowners on Valley Drive, Cross Lanes, Kanawha County, West Virginia. A small creek, known as Armour Creek runs perpendicular to and under Valley Drive. Both homes are located on the south side of Armour Creek. Armour Creek flows in an easterly direction through a 60-inch culvert under Valley Drive. On June 12, 1981, during a rainstorm, both properties sustained flood damage, allegedly due to the insufficient size of the culvert and to increased water run-off from 1-64, which is situated behind Valley Drive. The Besses and Morgans each seek $25,000.00 for damages to real and personal property as a result of the flood. The respondent alleges that the construction of 1-64 decreased the drainage area in the vicinity of claimants’ properties. Respondent further alleges that Valley Drive and the drainage underneath it were not constructed by respondent, but were taken into the State road system “as is.”
The section of 1-64 situated above Valley Drive was constructed in 1964-65. Bhajan S. Saluja, a civil engineer, testified that the drainage area which empties into Armour Creek is approximately 340 acres. Mr. Saluja calculated the run-off produced by this drainage area using two different methods. With each method he calculated the run-off for two-year, five-year and ten-year frequency storms. As part of the calculation, Mr. Saluja determined what portions of this watershed were 1-64 pavement, reclaimed grass area, developed area, and wooded area. A second set of calculations was made without the 1-64 construction by adding the acreage for 1-64 and the reclaimed grass area to the wooded area. According to these calculations, the 1-64 construction increased the water run-off by approximately 40%.
Under cross-examination, Mr. Saluja stated that his figures with and without 1-64 construction were based on conditions that presently exist. This was done, he said, to demonstrate the relative impact of the *41 construction. This impact, however, does not encompass the pre-1964 conditions with respect to the amounts of developed and wooded areas. According to Randolph Epperly, Jr., Chief Engineer, In-House Design Section with respondent, an interstate system is designed for the development that currently exists. He testified that, “You design on the conditions as they exist and make sure your design does not increase the flow or discharge into any drain system that would cause any problems on below there.” Mr. Epperly stated that the Cross Lanes area within this watershed has developed greatly since the 1-64 construction and this would increase the water run-off. He also testified that the 1-64 construction resulted in a decrease of the drainage area by six acres.
Mr. Saluja stated that the culvert is inadequate to carry the flow of water when Armour Creek is flowing at full capacity. Mr. Epperly disputed this contention, stating that by his calculations, the hydraulic capacity of Armour Creek is less than the culvert capacity. The differing figures arise out of different cross-sections used to compute the creek channel. Both men agreed that the top of the culvert is located above the level of the Besse property and would, therefore, cause the property to flood if the culvert was filled to capacity.
Robert Campbell, an engineer with respondent, testified that Valley Drive was taken into the State highway system on September 22, 1979. Mr. Campbell said that when a road is taken into the system, no guarantee is made that the road will be upgraded. This includes the drainage under the road. In a letter from respondent to the residents of Valley Drive, outlining the procedure for requesting that the road be taken into the system, this fact is explained. The letter states, in part:
“When and if subject road is included into the State Road System, the Department is not committed to upgrade the roadway, but only to give it its share of routine maintenance with consideration to other road needs throughout the State.”
Although much of the testimony of the expert witnesses was contradictory, it is clear that the flooding resulted from a combination of factors. First, the properties are in a low lying area. The Besse property is higher than Armour Creek, but below the top of the culvert. Photographs indicate that the Morgan property is at a slightly higher elevation than the Besse property. Mr. Saluja and Mr. Epperly agreed that in order to alleviate the problem the culvert would have to be placed at a level below that of the properties or enlarged to provide greater capacity. It is apparent, therefore, that the culvert has con *42 tributed to the damages. However, the culvert was not constructed by the respondent, and respondent did not undertake to upgrade the drainage system when Valley Drive became part of the State road system. There was also no evidence that respondent had notice of any problems with this culvert prior to the flooding.
A second factor involved is the increased water run-off in the area of Valley Drive. The Court cannot find that the construction of 1-64 was the proximate cause of the increased run-off. While the interstate may contribute in some part to the increase, the residential and commercial growth within the watershed has also contributed. This Court cannot speculate as to what portion of the damages, if any, was directly attributable to the construction of 1-64. Based on the evidence presented, the Court cannot conclude that the acts or omissions of the respondent were the proximate cause of the damages suffered. While this Court is not unmindful of the claimants’ losses, the claims must be denied.
Claims disallowed.